THE PEOPLE, ex rel. AMELIA M. ROBINSON, Appellant, *v.* MICHAEL O'KEEFE, Registrar, etc., Respondent.

Certain lands in the city of Brooklyn were sold for unpaid taxes; the purchaser executed to W. an instrument purporting to be an assignment of the certificates of sale, but did not deliver to him the certificates; this he had previously assigned and delivered to relator. The lands were redeemed as provided for by the city charter (Chap. 863, Laws of 1873) by payment to the registrar of arrears of the amount bid, with interest. The then registrar of arrears, defendant's predecessor in office, upon application of W., who represented that the certificates had been lost, and upon his giving a bond indemnifying the city from loss, gave to him a check on the treasurer for the amount received. Thereafter the relator presented to defendant the original certificates of sale with the assignment, and demanded payment of the amount received on redemption, which was refused. In proceedings by *mandamus* to compel such pay-

ment, *held* that, assuming that the payment to W. was irregular and without authority, yet, as thereby the fund applicable to the payment was exhausted, and under the scheme of the charter, it was not within the power of the registrar of arrears, or the other administrative officers, to pay the amount claimed.

Under said charter (§ 8, tit. 8), moneys paid to the registrar of taxes on redemption of lands sold for taxes constitute a trust fund for the benefit of holders of tax certificates, of which each holder is entitled to a definite share, and the shares of other holders may not be taken to make good his share in case it has been paid over to one not entitled to it; and where, by the act of the predecessor of a registrar, the portion of such fund applicable to the payment of a share has been exhausted, whether rightfully or wrongfully, the registrar is justified in refusing payment.

*It seems* that in such case if the share has been paid out wrongfully the remedy of the person entitled thereto is by action.

(Argued October 30, 1885 ; decided November 24, 1885.)

APPEAL from an order of the General Term of the Supreme Court, in the second judicial department, made September 11, 1883, which reversed a judgment of Special Term awarding a peremptory writ of *mandamus* commanding defendant, as registrar of arrears of the city of Brooklyn, to sign a check on the treasurer for a sum paid in to redeem certain lands of the relator from tax sales.

The material facts are stated in the opinion.

*George B. Ely* for appellant.    The relator was entitled to payment of the amount called for by the certificates.    (Laws of 1854, 879, § 26 ; Laws of 1862, 196, § 28; Laws of 1873, 1319, § 5; 1324, § 23 ; 1311, § 20.)    The failure to file the certificates in the office of the street commissioner did not deprive the relator of the right to recover the money paid. (*Chapman* v. *City of Brooklyn*, 40 N. Y. 378; Laws of 1854, 880, §§ 29, 30 ; *Ayres* v. *City of Brooklyn*, 87 N. Y. 639; *N. Y. & N. H. R. R. Co.* v. *Schuyler*, 34 id. 83 ; *Brainard* v. *N. Y. & H. R. R. Co.*, 25 id. 500 ; *Holbrook* v. *N. J. Zinc Co.*, 57 id. 623.)    The tax certificates were assignable. (*Brevoort* v. *City of Brooklyn*, 89 N. Y. 128.)    It was competent to prove as part of the *res gestæ* the fact that the paper was

filed in the registrar of arrears' office; that a receipt from
Wheeler was attached to it and payment of the redemption
money to Wheeler. (*Foster* v. *Beals,* 21 N. Y. 247.) A mer-
ger never takes place against the interest of the party, nor when
it is not intended, nor against equity. (*Smith* v. *Roberts,* 91 N.
Y. 475; *Payne* v. *Wilson,* 74 id. 348; *Sheldon* v. *Edwards,* 35
id. 279.) An illegal tax levy is a cloud upon title, to remove
which suit may be brought. (*Rumsey* v. *City of Buffalo,* 97
N. Y. 114.) It is no answer to say that the city has wrong-
fully paid the money to a stranger on his mere claim. (*Bk.
of Commonwealth* v. *Mayor, etc.,* 43 N. Y. 184; *Schwinger*
v. *Hickock,* 53 id. 280; *Newman* v. *Supervisors,* 45 id. 687.)
The duties of registrar are ministerial. *Mandamus* is the
proper remedy. Laws of 1873, 1378, chap. 863, tit. 19,
§ 27; Laws of 1873, 1324, chap. 863, tit. 8, § 27; *People* v.
*Supervisors,* 10 Wend. 366; *People* v. *Comptroller,* 77 N. Y.
45.) The delivery of the certificates with the assignment in
blank signed constituted a valid transfer. (*Holbrook* v. *N. J.
Zinc Co.,* 57 N. Y. 623; *Brainard* v. *N. Y. & H. R. R. Co.,*
25 id. 496; *N. Y. & H. R. R. Co.* v. *Schuyler,* 34 id. 82.)

*John A. Taylor* for respondent. Where evidence of title is
produced, the non-production of the certificate of sale will not
justify the registrar of arrears in refusing to pay moneys
received by him in redemption from the sale. (*Ayers* v. *City
of Brooklyn,* 24 Hun, 234; 87 N. Y. 639.) The failure of
Wheeler to produce the certificates was insufficient as matter
of law to put the registrar upon inquiry as to whether they had
been assigned to any one else. (*Foster* v. *Beals,* 21 N. Y. 247;
*Van Keuren* v. *Corkins,* 66 id. 77.) The registrar, in prepar-
ing and signing a check in payment of moneys received in
redemption of tax sales, exercises powers of a *quasi-*judicial
character. (Laws of 1873, chap. 863, p. 1324, tit. 8, § 23;
High's Extraordinary Legal Remedies, §§ 46, 47; *People* v.
*Leonard,* 74 N. Y. 443; *Howland* v. *Eldridge,* 47 id. 457.)
The relator failed to show title to the certificates in question.
(*Robinson* v. *Williams,* 22 N. Y. 382.) The writ should have

been refused by reason of the relator's great *laches*. (High's Extraordinary Legal Remedies, § 269; *People* v. *Seneca Common Pleas*, 2 Wend. 264; *People* v. *Delaware Common Pleas*, id. 256; *People* v. *Syracuse*, 78 N. Y. 56.)

ANDREWS, J.   The duty sought to be enforced in this case by *mandamus* is prescribed by section 23, chapter 863 of the Laws of 1873, known as the city charter of Brooklyn.   That section makes it the duty of the registrar of arrears, upon the application of the holder of a certificate of sale of lands for taxes, which have been redeemed from the sale, to be repaid the amount bid with interest, to examine the case, and, if found to be correct, upon surrender of the certificate, to prepare and sign a check on the treasurer for the amount received " in said case," and after procuring the counter-signature of the comptroller, to deliver it to the applicant.   The lands now owned by the relator were sold for taxes February 19, 1861, and certificates of sale were duly executed to one Feeks, the purchaser, who on the 27th day of February, 1862, executed and delivered to one Wheeler an instrument purporting to be an assignment of the certificates, but it was found by the trial judge that the certificates were never delivered to the assignee.   The relator, on the 14th day of August, 1874, she then being the owner of the lands embraced in the certificates, redeemed from the sale by paying to the registrar of arrears the amount for which they had been sold, with interest, at the rate prescribed by the charter.   On the 13th day of August, 1876, the then registrar of arrears, upon the application of Wheeler, as assignee and owner of the certificates, by virtue of assignment from Feeks above referred to, gave to Wheeler his check, countersigned by the comptroller, for the amount received from the relator on the redemption, which was paid by the treasurer.   The certificates were not surrendered by Wheeler to the registrar, trar, he claiming that they had been lost.   The assignment to Wheeler was filed in the registrar's office the day the payment to him was made, and the registrar gave the check, relying

upon the assignment and the representation of Wheeler that the certificates had been lost, but he took from Wheeler a bond indemnifying the city of Brooklyn against loss or damage by reason of such payment. Thereafter, on the 16th day of January, 1882, the relator presented to the registrar of arrears the original certificates of sale, with written assignments indorsed thereon from Feeks, in blank, and without date, and demanded payment to her as assignee of the certificates of the amount paid by her as owner of the land, August 14, 1874, on the redemption from the sales described in the certificates, which was refused. The trial judge found that the relator became the owner of the certificates in 1862 or 1863, prior to the assignment to Wheeler, and held that the payment of the redemption money to him, although made without notice of the relator's rights, was without authority, being unaccompanied with the surrender of the certificates, and constituted no defense in this proceeding. We are of opinion that the order of the General Term, reversing the judgment, should be affirmed upon the ground that the fund applicable to the payment of the relator's claim was depleted and exhausted by the payment made to Wheeler; and that assuming that that payment was irregular and without authority, nevertheless under the scheme of the charter, it rendered it impossible for the registrar of arrears, or the other admininistrative city officers, to pay the relator the amount claimed. The funds of the city are by the charter divided into five classes, the *fifth* one being the redemption fund, comprising all moneys received for the redemption of real property sold for taxes and assessments, etc., and the charter prohibits the use of one fund for the purposes of any other, except as specially provided therein. (Tit. IV, §§ 6, 11.) The moneys paid to the registrar of arrears on the redemption of property sold for taxes constitute a trust fund for the benefit of the holders of tax certificates, and to reimburse them for the purchase-money paid, with interest. This is clear from the provisions of section 8, title VIII, in connection with the provisions already referred to. The money paid on redemption is, by the terms of section 8,

title VIII, paid to the registrar for the use of the purchaser at the tax sale, or his assignees, and by section 23 of the same title it is the amount received " in such case " which is to be returned to the purchaser in case of redemption. The redemption fund in the hands of the treasurer represents the aggregate of redemption moneys, of which each purchaser whose purchase has been annulled by redemption is entitled to a definite share. The share of the relator has been paid to another claimant. The shares of other persons having an interest in the redemption fund cannot be taken to make good the relator's share, assuming that it was paid over to the wrong person. It was paid under a claim of right, and the payment took from the redemption fund the part which belonged to the relator. The registrar of arrears cannot correct the mistake. He was justiffed in refusing payment to the relator, because the fund applicable to it has, by the act of his predecessor, been taken from his control, and whether rightfully or wrongfully, is, we think, in this proceeding, of no consequence. The relator, if she was entitled to the fund, has doubtless a remedy by action. But the remedy by *mandamus* would be fruitless.

The order should be affirmed.

All concur.

Order affirmed.